IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0383-WS-C |
| ) | |
| DAMON LETT d/b/a DAMON LETT ) | |
| ROOFING, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**ORDER**

This declaratory judgment action comes before the Court on plaintiff's Motion for Judgment on the Pleadings (doc. 35) as to defendant Damon Lett, and on plaintiff's Motion for Summary Judgment (doc. 37) as to defendant Kiker Corporation.  No defendant filed responses to either of these Motions, and the court-ordered deadlines for doing so have long since expired. (*See* docs. 39, 40.)  Accordingly, both Motions are ripe for disposition.

**I.      Relevant Background.**

    *A.     The Underlying Lawsuit.*

On March 19, 2010, St. Catherine of Siena Parish ("St. Catherine") filed suit against Kiker Corporation ("Kiker") and other defendants in the Circuit Court of Mobile County, Alabama.  In its state-court complaint (doc. 1, Exh. C), St. Catherine alleged that it had entered into an agreement in May 2003 for Kiker to install a new roof on St. Catherine Church; that Kiker performed the roofing job by using specialty nails to affix the new shingles to the church's existing roof decking, which was made of gypsum rather than wood; that Kiker did so even though previous research and analysis indicated that plywood sheets should be attached to the existing roof deck before new shingles were installed; that Kiker specifically represented to St. Catherine that the specialty nails would suffice without the new plywood; and that Kiker completed the job in March 2004.  St. Catherine's pleading further alleged that the church's roof experienced leakage in April 2008, and on more than a dozen occasions since.  According to St. Catherine, Kiker inspected the roof many times but never successfully diagnosed or corrected the

roof leak problems that plagued St. Catherine Church.  In reliance on these factual allegations, St. Catherine sued Kiker on theories of negligence, wantonness, breach of contract, and misrepresentation/suppression, seeking damages for diagnosis and repair of roof leaks, clean-up of the church following the repeated roof leaks, loss of use of the church, installation of a leak-free roof, and correction of moisture intrusion and staining problems throughout the church.

Kiker proceeded to file a third party complaint (doc. 1, Exh. D) against Damon Lett Roofing ("Lett Roofing") in the state-court action.  In that pleading, Kiker alleged that it had entered into a subcontract with Lett Roofing, pursuant to which Lett Roofing agreed to construct and install the new roof for St. Catherine Church, and further agreed to defend, indemnify, and hold Kiker harmless for claims or damages arising out of Lett Roofing's acts or omissions in that endeavor.  Kiker maintained that Lett Roofing had breached its duties under contract and tort law by failing to perform the St. Catherine roofing work in a good and workmanlike manner and failing to defend and indemnify Kiker from St. Catherine's suit.  On that basis, Kiker asserted a host of claims against Lett Roofing sounding in breach of contract, negligence, breach of warranty (implied and express), common law indemnity, and the like.

With the state-court action in full swing, Evanston Insurance Company ("Evanston") filed the instant declaratory judgment action in this District Court against Lett Roofing, Kiker and St. Catherine, predicating federal jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332.  In its Complaint (doc. 1), Evanston alleged that Lett Roofing was the named insured on a pair of commercial lines policies issued by Evanston, one for the policy period May 21, 2007 through May 21, 2008, and the other for the policy period May 21, 2008 through May 21, 2009.  Evanston seeks a declaration that it owes no duty to defend or indemnify its named insured or any other party for claims asserted in the underlying action.

**B.     *The Insurance Policies.***

Evanston's coverage position hinges on several provisions from the applicable insurance policies.  For starters, both the 2007-2008 policy ("Policy #1") and the 2008-2009 policy ("Policy #2") included a "Classification Limitation Endorsement," which provided as follows: "The coverage provided by this policy applies only to those operations described under the 'description' and/or 'classification' on the declarations of the policy."  And the declaration pages listed under the heading "Description of Hazards / Insured Classification(s)" the phrase "Roofing

– Residential," and no other categories of operations.  (Doc. 1, Exh. A, at 2, 10; doc. 1, Exh. B, at 2, 10.)

Several other provisions of the policies are potentially relevant.  First, neither Policy #1 nor Policy #2 contains an "additional insured" endorsement, and the sole named insured on the two policies is Damon Lett d/b/a Damon Lett Roofing.  Second, both policies contain a breach of contract exclusion that reads, "This insurance does not apply to liability for breach of contract." (Doc. 1, Exh. A, at 5 ¶ 9; doc. 1, Exh. B, at 5 ¶ 9.)  Third, both policies exclude from the scope of covered "property damage" any such damage to "That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," or "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  (Doc. 1, Exh. B, at 29 ¶ 2(j)(5) & (6).)

### C.   *Procedural History.*

After Evanston filed the Complaint in this declaratory judgment action and served process on all three defendants, this case took an unusual turn.  Defendant Damon Lett d/b/a Damon Lett Roofing filed a very short *pro se* Answer on September 23, 2011, wherein he wrote, "I will not be contesting the complaint filed against me, and I will be representing myself in this case." (Doc. 11, at 1.)  Lett Roofing has never made any other filings in this case, and has not undertaken in any way to defend itself against Evanston's claims.  The other two defendants, Kiker and St. Catherine, filed Rule 12(b) Motions (with St. Catherine simply adopting Kiker's motion wholesale) arguing that this action should be dismissed for want of a case or controversy; however, Kiker later acknowledged that its Rule 12(b) Motion should be denied, and it was.  St. Catherine made no such concession, even though its Motion to Dismiss was simply a "me too" tagalong iteration of Kiker's motion.  On January 24, 2012, the undersigned entered an Order (doc. 32) denying St. Catherine's motion on the merits.[1]

---

[1] Also, both St. Catherine and Kiker have denied Evanston's allegation that it owes no coverage or duty to defend Lett Roofing.  For its part, St. Catherine "denies the averment that Evanston does not have coverage for or a duty to defend Damon Lett d/b/a Damon Lett Roofing."  (Doc. 8, ¶ 12.)  And Kiker likewise "denies the allegations that Evanston does not have coverage for or a duty to defend Damon Lett d/b/a Damon Lett Roofing." (Doc. 18, ¶ 12.)  That said, these defendants have never undertaken to articulate why coverage exists, or what policy provisions they contend give rise to such an obligation for Evanston.  To this day, then, (Continued)

Some months later, Evanston moved for judgment on the pleadings as to defendant Lett Roofing, and for summary judgment as to defendant Kiker, on overlapping and largely identical grounds. Evanston filed no dispositive motion as to defendant St. Catherine, which appears to remain a live, viable defendant in this case.[2] No defendant (Lett Roofing, Kiker, or St. Catherine) filed any brief in opposition to either of Evanston's dispositive motions concerning insurance coverage issues.[3] The only defendant to file anything in acknowledgment of these motions was Kiker, which filed a simple one-sentence document confirming "that it will not be filing a response in opposition to the Motion for Summary Judgment filed by Evanston Insurance Company." (Doc. 43.)[4]  The resulting cloak of silence covering all defendants leaves the Court in the dark as to how, why or even if defendants still maintain that the Evanston policies provide

---

the Court has no information as to why any defendants believe that coverage under the Evanston policies exists for Lett Roofing or anyone else in connection with the underlying state-court proceeding.

[2]   This is so, despite the fact that the legal arguments against coverage in the underlying litigation appear identical for St. Catherine as they are for Kiker and Lett Roofing. Be that as it may, given that Evanston elected to omit filing a dispositive motion against St. Catherine, this Court cannot and will not impute a request for summary judgment against that defendant.

[3]   In deference to Damon Lett's *pro se* status, the Court took pains to caution him that "failure to respond to the Motion for Judgment on the Pleadings in a timely manner may result in judgment being entered against him on all claims and causes of action herein, including particularly Evanston's claims that it owes no duty to provide coverage, defense or indemnity to Lett Roofing in the underlying litigation." (Doc. 40, at 1 (emphasis omitted).)  Despite this admonition, Lett Roofing chose not to respond or to be heard in any way on Evanston's dispositive motion.

[4]   Even this filing was curiously worded, inasmuch as Kiker did not state that it did not oppose the Rule 56 Motion, only that it was declining to file a response. This distinction is important because it means that, rather than entering summary judgment against Kiker on a consent basis, this Court is constrained to write to Evanston's Motion on the merits, resulting in an expenditure of judicial resources for an activity that Kiker itself evidently decided not to undertake.

coverage in the underlying litigation. Certainly, no defendant has articulated any legal argument favoring coverage by reference to any policy language or case law.[5]

## II.     Legal Standards.

### A.     *Motion for Summary Judgment.*

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

---

[5] To add one additional layer of intrigue to the situation, one might expect that if defendants could not be troubled to respond to Evanston's Rule 56 and Rule 12(c) arguments that coverage is foreclosed as to the underlying case, that they would also be amenable to resolving this declaratory judgment action amicably with Evanston and walking away. Such a thought would be inaccurate in this case. Despite prodding by the Magistrate Judge, the parties filed a "Statement Regarding Settlement" (doc. 44) reflecting their inability to resolve any issue joined herein. The upshot of these circumstances is that Evanston seeks a declaratory judgment that it owes no coverage to defendants in the underlying case, that defendants have refused to consent or agree to such a coverage determination, and that defendants have likewise declined to offer any explanation in these proceedings as to why they feel that Evanston does or may owe defense or indemnity obligations to anyone in the underlying action.

As noted, Kiker notified the Court of its decision not to file a response in opposition to the Motion for Summary Judgment. "Summary judgment is not automatically granted by virtue of a non-movant's silence." *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F. Supp.2d 1347, 1352 (S.D. Ala. 2011). "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even when there is a complete failure to respond to the motion"). That said, a court is not obligated to read minds and ordinarily cannot construct arguments or theories that a party has failed to raise.[6] As such, Kiker's election not to proffer argument, evidence or authority in response to plaintiff's Rule 56 Motion is at its peril. And Kiker's failure to identify any insurance policy provisions that it contends give rise to coverage duties on Evanston's part or rebut facially applicable exclusions from coverage will not be remedied by this Court unilaterally "filling in the blanks" on its behalf.[7]

---

[6] *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

[7] *See, e.g., Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (recognizing that district courts are under no obligation to raise non-jurisdictional defenses *sua sponte*); *Vision Bank v. Merritt*, 2010 WL 5474161, *4 (S.D. Ala. Dec. 8, 2010) ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting this Court to fill in the gaps."); *Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system. It is not a court's task to research legal arguments on a party's behalf."); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

### B.     *Motion for Judgment on the Pleadings.*

Evanston's Motion against defendant Lett Roofing is not framed as a motion for summary judgment, but is instead styled as a Motion for Judgment on the Pleadings pursuant to Rule 12(c), Fed.R.Civ.P. The legal standard is similar, albeit with a more circumscribed scope of materials reviewed. In this Circuit, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted); *see also Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.") (citations omitted). As a general rule, courts "will not consider matters outside the pleadings when passing on a Rule 12(c) motion." *Horsley v. Feldt*, 304 F.3d 1125, 1136 n.6 (11th Cir. 2002).

As noted *supra*, Lett Roofing was given a full and fair opportunity to be heard in response to Evanston's Rule 12(c) Motion, and was cautioned that failure to do so could result in judgment being entered against it on all claims and causes of action. Yet Lett Roofing elected not to respond. What's more, Lett Roofing has denied none of the allegations in the Complaint. Defendant proceeds in this manner at its own risk, and for the reasons stated *supra*, this Court will not endeavor to research or formulate arguments for Lett Roofing that it failed to raise and litigate itself.

### III.     Analysis.

In this action, Evanston seeks a judicial declaration that it owes neither a duty to defend nor a duty to indemnify Lett Roofing (its named insured) or Kiker in connection with the state-court action brought by St. Catherine. Under Alabama law, the duty to defend is more expansive than the duty to indemnify.[8] Where a court determines that an insurer owes no duty to defend its

---

[8] *See, e.g., Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) ("Alabama holds that an insurer's duty to defend may be broader than its duty to indemnify."); *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005) ("This broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to be construed liberally in favor of the insured and strictly against the insurer.").

insured in a particular matter, that determination is necessarily dispositive of the narrower duty to indemnify, as well. *See Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Essex Ins. Co. v. Foley*, 827 F. Supp.2d 1326, 1331 (S.D. Ala. 2011) ("as recent Eleventh Circuit precedent confirms, a judicial determination of no duty to defend compels a finding of no duty to indemnify").[9] Therefore, the Court's initial focus is on the duty to defend. If that duty should be found lacking here, then such a determination requires a finding that Evanston owes no duty to indemnify, either.

In evaluating whether a duty to defend exists, Alabama courts have held that "[t]he insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1065 (Ala. 2003); *see also Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 14 (Ala. 2001) ("If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured.").

The most glaring problem with any claim that Evanston owes Lett Roofing or Kiker any indemnity or defense obligations under the subject insurance policies lies in the Classification Limitation Endorsement. As mentioned previously, that endorsement limited coverage to "those operations described under the 'description' and/or 'classification' on the declarations of the

---

[9] *See also National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no duty to indemnify."); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 n.3 (3rd Cir. 2009) ("A finding that the duty to defend is not present will preclude a duty to indemnify."); *Nautilus Ins. Co. v. Structure Builders & Riggers Machinery Moving Div., LLC*, 784 F.Supp.2d 767, 771 (E.D. Ky. 2011) ("If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader."); *Murphy v. Acceptance Indem. Ins. Co.,* 788 F.Supp.2d 332 (D. Vt. 2011) ("[B]ecause the duty to defend is broader than an insurer's duty to indemnify, if a court determines that there is no duty to defend, the insurer will not have a duty to indemnify.") (citations omitted); *Kenneth Cole Productions, Inc. v. Mid–Continent Cas. Co.,* 763 F.Supp.2d 1331, 1334 (S.D. Fla. 2010) ("the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend") (citations omitted).

policy."  And the policy declarations specified a single type of operations under the heading "Description of Hazards / Insured Classification(s)," to wit: "Roofing – Residential."

This type of coverage-narrowing endorsement is entirely proper and enforceable under Alabama law.  *See generally St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So.2d 1375, 1377 (Ala. 1992) ("in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage").  However, because the Classification Limitation Endorsement is a narrowing clause that limits the policies' otherwise-broad coverage, it is in the nature of an exclusion.  Under Alabama law, an insurer bears the burden of proving applicability of a policy exclusion.  *See, e.g., Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 697 (Ala. 2001) ("Twin City has the burden of proof in asserting that a claim is excluded under its policy of insurance."); *Brown*, 832 So.2d at 12 ("In general, the insurer bears the burden of proving the applicability of any policy exclusion.").

Evanston has met its burden.  On its face, the Classification Limitation Endorsement restricts coverage to Lett Roofing's operations consisting of "Roofing – Residential."  As the term "residential" is not defined in the policies, it must be construed in accordance with its usual and ordinary meaning.  *See State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So.3d 1167, 1169 (Ala. 2009) ("When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them.") (citations omitted); *Lambert v. Coregis Ins. Co.*, 950 So.2d 1156, 1161 (Ala. 2006) ("If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.") (citations omitted).  Notably, in ascertaining a term's plain, ordinary meaning, "[t]he court should not define words it is construing based on technical or legal terms."  *Lambert*, 950 So.2d at 1161-62 (citations omitted).

The common, everyday meaning of the phrase "Roofing – Residential" would exclude operations involving roofing jobs performed at a church.  The dictionary definition of "residential" is "of, relating to, or having residence" or "of or appropriate for residences."  *Webster's New College Dictionary* (Third Ed., 2008).  The same source defines "residence" as "the place in which one lives."  So, in its common, ordinary meaning, the Classification Limitation Endorsement restricts coverage to the insured's roofing operations at places where

people live (*i.e.*, roofing jobs on homes or dwellings), and excludes coverage for roofing operations at commercial buildings or other facilities open to the public (such as museums, libraries, courthouses, or churches). The pleadings in the underlying case, and all other facts before the undersigned, show that Kiker and Lett Roofing seek coverage under the Evanston policies for Lett Roofing's operations in installing a roof on St. Catherine Church in Mobile, Alabama. This is not a roofing job for a home or a dwelling, and cannot reasonably be characterized as a residential roofing operation within the narrowing scope of the Classification Limitation Endorsement. Defendants have articulated no argument under which the "Roofing – Residential" limitation on covered operations could plausibly, or even colorably, be viewed as allowing coverage for the insured's operations of installing a roof on a church. And the Court perceives no such argument that could have been made. The underlying lawsuit is confined to operations by Lett Roofing and/or Kiker that plainly fall outside the coverage restriction prescribed by the Classification Limitation Endorsement in both of Evanston's policies. Stated differently, the pleadings in the underlying action clearly concern an act or occurrence that is outside the limited coverage provided by Evanston's insurance policies to Lett Roofing. As such, Evanston owes no duty to defend (and hence, no duty to indemnify) Lett Roofing or Kiker in connection with the claims brought against them in the underlying lawsuit.[10]

**IV.  Conclusion.**

For all of the foregoing reasons, the Court concludes that there are no genuine issues of material fact and that plaintiff, Evanston Insurance Company, has met its burden of showing as a matter of law that it owes no duty to defend (and, consequently, no duty to indemnify)

---

[10] Because the Classification Limitation Endorsement unequivocally bars coverage for Kiker or Lett Roofing in the underlying action, the Court need not reach Evanston's alternative arguments that other policy provisions foreclose any duty to defend or indemnify Kiker or Lett Roofing, in whole or in part, as to various aspects of the underlying lawsuit. That said, many of those arguments appear meritorious as well. For example, any claims by Kiker that Evanston owes it a duty to defend or indemnify under the subject policies fail because Kiker is neither a named insured nor an additional insured under those policies. The only "named insured" listed on the declarations of those policies is "Damon Lett d/b/a Damon Lett Roofing." Moreover, neither policy contains an "additional insured" endorsement. And no allegations in the pleadings of the underlying action, or facts in the record herein would reasonably support a conclusion that Kiker qualifies as an insured under the "Who is an Insured" section of the policies. Kiker's non-insured status is, therefore, an additional, independent reason why Evanston would owe it neither defense nor indemnity obligations in the underlying action.

defendants Damon Lett d/b/a Damon Lett Roofing or Kiker Corporation in connection with the lawsuit brought by St. Catherine of Siena Parish in state court concerning alleged defects in roofing work performed by Kiker and/or Lett Roofing on the church premises.  Accordingly, plaintiff's Motion for Judgment on the Pleadings (doc. 35) as to defendant Damon Lett d/b/a Damon Lett Roofing, and its Motion for Summary Judgment (doc. 37) as to defendant Kiker Corporation are both **granted**.  A separate declaratory judgment will be entered.

The remaining question concerns the status of Evanston's claims against defendant St. Catherine of Siena Parish.  As noted, plaintiff never filed a dispositive motion as to its claims against that entity.  Moreover, despite the obvious implications for the underlying litigation, St. Catherine never responded to Evanston's dispositive motions as to the other defendants.  The undersigned's legal conclusions that Evanston owes no coverage to Kiker or Lett Roofing would appear to apply with equal force to any argument by defendant St. Catherine that such coverage does exist.  Yet this action remains pending as between Evanston and St. Catherine, even though it is doubtful that there are any *bona fide* legal issues remaining for resolution between them in the wake of this Order.  To prevent this action from languishing indefinitely in this unusual procedural posture, counsel for Evanston and St. Catherine are **ordered** to meet and confer in good faith about the status of this action as between them, and to file a joint report concerning same by no later than **October 26, 2012**.  If any triable issues remain joined between these parties that cannot be resolved in summary fashion, the Court will promptly refer the matter to Magistrate Judge Cassady for a Rule 16(b) Scheduling Conference.

DONE and ORDERED this 15th day of October, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE